THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEE A. ROBINSON, Defendant-Appellant.

First District (4th Division)    No. 79-895

Opinion filed August 28, 1980.—Rehearing denied September 29, 1980.

Howard T. Savage, of Chicago (Howard O. Edmonds, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and William Gamboney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Lee A. Robinson, was charged by indictment with the offense of rape (Ill. Rev. Stat. 1975, ch. 38, par. 11—1). A jury found him guilty. He was sentenced to imprisonment for a term of 4 years to 4 years and 1 day. Defendant appeals, and we affirm.

On appeal to this court is the single issue of whether the State's identification testimony proved defendant guilty beyond a reasonable doubt.

The complainant testified that on March 2, 1977, at approximately 9:40 p.m., she was returning to her home from the store. A man, whom she later identified as defendant, was walking behind her. He eventually passed her and walked in front of her. By the time she reached the entrance to her building, the man was standing in the doorway. The light above the doorway illuminated the area. The man pointed a gun at her and stated that if she cooperated she would not be harmed. Complainant's testimony revealed the man directed her to a nearby alley. While en route to the alley, the man stopped her and forced her to remove some of her clothing. He then removed more of her clothing himself before forcing sexual intercourse. Complainant testified that during the struggle she and the man were face to face. There was a bright light at the corner of the building, as well as light coming from surrounding apartments, which allowed her to see her attacker.

The complainant further testified that she took a penknife from her coat and attempted to stab the man. In response to this, he jumped up, dragged her to the alley, and had intercourse with her a second time. She recalled there being illumination from a street light in the alley. As well,

she remembered the bright lights from a car which interrupted the attack. After the car passed, the man threatened to shoot her. Instead, he turned around and walked away. Complainant then went to her home and called the police.

The complainant had given the police a description of the man who attacked her. She stated he was approximately 5 feet 8 inches in height, because she stood 5 feet 5 inches and the man was "2 or 3 inches taller." She estimated his weight at 118 pounds. He was wearing a green ski jacket, black slacks, and brown suede loafers. In her testimony, complainant stated she thought she told the police that defendant was wearing a hat, but she did not recall telling them one side of his face was swollen.

On March 4, 1977, complainant returned to work at the Veterans' Administration Hospital Dental Clinic. That day, about 1 p.m., she recognized a man in the clinic as the one who attacked her. She recalled seeing him in the clinic on three or four other occasions. A call was placed to the police, but when they arrived the complainant did not see the man there. Later that evening, complainant viewed a lineup and identified defendant. She acknowledged that a photograph of the lineup indicated the left side of defendant's face was swollen although she did not originally report the swelling to the police.

Chicago Police Officer Edward Morange next testified for the State. He was the officer who answered the call to interview a rape victim on the date in question. He said he spoke to the complainant, who was visibly upset, and she told him she had been raped. She did not tell Officer Morange the attacker was wearing a cap or that she had seen him before.

Chicago Police Officer Raymond Latimer testified he went to the complainant's home 2 days after the incident and found a knitted cap and a pair of pantyhose near the scene of the incident. Complainant identified the pantyhose as her own.

The State and defendant agreed to enter certain stipulations which were admitted as evidence and read to the jury. It was stipulated that if Dr. Graeaves had been called he would have testified he examined the complainant and noticed scratches and lacerations on her legs. He would also have stated that he was unable to detect the presence of sperm in the vaginal area. It was also stipulated that Dr. Rubin; if called, would have testified he is an oral surgeon and surgically removed one of defendant's teeth on February 28, 1977. Dr. Rubin would have been heard to testify that when he examined defendant on March 4, 1977, he noticed swelling on the side of defendant's face.

The last witness for the State was Rodney Blach, a microanalyst employed by the Chicago Police Department. He testified to conducting an analysis of hair taken from defendant and hair taken from the cap

found at the scene of the incident. Mr. Blach concluded the hairs were similar.

Prior to introduction of defendant's evidence, he moved for a directed verdict and it was denied.

Defense witnesses included Isaac Foster, who had known defendant for 12 years. He testified to accompanying defendant to the Veterans' Administration Hospital on March 4, 1977. Foster stated defendant's jaw was swollen on that date.

Linda Dotson, defendant's girl friend, testified that on February 28, 1977, she went with defendant to a clinic at the Veterans' Administration Hospital where he had a tooth extracted. She said defendant suffered from a swollen jaw from February 28, 1977, to March 3, 1977. Michael Grymes, a Chicago police officer, later testified that he sat in on a conversation between two assistant State's Attorneys and Linda Dotson on September 11, 1978. In that conversation, Dotson said she did not recall anything concerning the occurrences of the week of February 28, 1977. She also stated she did not remember where either she or defendant went that week. Ms. Dotson testified at trial on September 19, 1978.

Defendant offered an alibi defense. He indicated that before his arrest he had seen complainant at the clinic three or four times. He said he had spoken to her but only as it related to appointments for medical service. Defendant recalled going to the clinic with Linda Dotson to have a tooth extracted on February 28, 1977. He did not work for a week after the extraction. Defendant further testified that on the date in question he and Dotson were together at about 5 or 5:30 p.m. They went out to get assistance in relation to his income tax return. After making some stops, the couple arrived home at approximately 8:30 p.m. and went to bed. Defendant said he awoke at about 11 p.m. but denied going out of the house between 8:30 and 11 p.m.

Defendant confirmed he and Isaac Foster went to the clinic on March 4, 1977. He admitted speaking to the complainant and taking a seat in the reception area. The doctor examined defendant briefly; then defendant and Foster left the clinic. Defendant said when he returned home he began packing because he was going to visit his mother in Detroit, Michigan. His father called to tell him the police were looking for him. He then went to the police station where he was placed in a lineup and identified.

Defendant denied ever having owned or possessed a gun. He denied ever having known where complainant lived or ever having had sexual intercourse with her.

Defendant rested his case and the trial court read its instructions to the jury. A verdict of guilty was returned.

Defendant's essential claim is the State failed to prove him guilty

beyond a reasonable doubt. His argument hinges on his assertion of a conflict between the identification testimony and his alibi. Defendant refers to the case of *People v. Gardner* (1966), 35 Ill. 2d 564, 221 N.E.2d 232. In *Gardner*, the supreme court reversed a rape conviction, finding a basic conflict between the strength of the identification testimony and the alibi. In that case, the court found that nothing except the identification by the victim and defendant's proximity to the victim's apartment connected defendant with the crime. The court objected to the use of a "show-up" as opposed to a "lineup," finding such method, alone, particularly unreliable. Although in that case identification of the defendant by the complaining witness was weakened by several factors, including the show-up, the court still cited the governing rule:

> "[T]he testimony of a single witness, if it is positive and the witness credible, is sufficient to convict even though it is contradicted by the accused [citations]. * * *." *Gardner*, at 571.

■■ Here, the complaining witness viewed her attacker under conditions conducive to a positive identification. When complainant reached the entrance to her apartment building, defendant was already there, standing in the illumination of the light above the doorway. He stood in front of her, giving her the opportunity to see him clearly. The evidence established there was a bright light at the corner of the building and there was light coming from apartments surrounding the area where the incident took place. During the encounter, complainant and her attacker were face to face. For these reasons, the trial court found the witness credible and believed her identification to be positive. Therefore, we find the rule crystallized by the supreme court 6 years after the *Gardner* case to be binding here. The rule states:

> "'[W]here the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and [she] viewed the accused under such circumstances as would permit a positive identification to be made. (*People v. Brinkley*, 33 Ill. 2d 403; *People v. Washington*, 26 Ill. 2d 207; *People v. Mack*, 25 Ill. 2d 416; *People v. Cox*, 22 Ill. 2d 534.)'" *People v. Stringer* (1972), 52 Ill. 2d 564, 569, 289 N.E.2d 631, 634.

■■ Further, with respect to identification, we are moved by the evidence indicating prior acquaintance of complainant with defendant. Both defendant and complainant testified to seeing each other at the Veterans' Administration clinic prior to the incident. Complainant had seen defendant three or four times at the clinic and at least once in the doorway of her apartment building. We are well aware that testimony of an identification witness is strengthened to the extent of any prior acquaintance with the accused. (*People v. Tillman* (1980), 82 Ill. App. 3d

430, 438, 402 N.E.2d 825, 830.) Complainant's familiarity with defendant's appearance, coupled with the lighting in which the attack occurred, supports the judgment of the trial court.

■■ A court of review may not substitute its judgment for that of the trier of fact on questions involving the weight of evidence. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320.) Testimony regarding the hair taken from the cap and the evidence concerning defendant's alibi were properly before the jury. They ultimately weighed those facts and the testimony of the complaining witness. We find no reason to reverse the judgment based upon their verdict.

The judgment of the circuit court is affirmed.

Affirmed.

LINN, P. J., and JIGANTI, J., concur.