THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE WILLIAMS, Defendant-Appellant.

First District (1st Division)    No. 80-153

Opinion filed June 1, 1981.

Sam Adam, of Chicago (Ira A. Motz, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Joseph J. McNerney, III, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, defendant George Williams was convicted of armed robbery and sentenced to 10 years in the State penitentiary. He appeals.

The issues presented for review are: (1) whether defendant was proven guilty beyond a reasonable doubt; (2) whether the trial court erred

in allowing a police officer to testify to the complainant's pretrial identification of defendant; (3) whether it was error to allow the State to present two rebuttal witnesses to defendant's testimony and to deny the defendant's motion for a continuance to bring in a surrebuttal witness; and (4) whether defendant was denied a proper sentencing hearing.

Shirley Calhoun testified that on May 6, 1977, she was returning home from work when she stopped at a currency exchange to cash some personal checks and purchase food stamps. While waiting her turn in line a man, later identified as defendant, came in and stood behind her and to the side.

After transacting her business, Mrs. Calhoun left the currency exchange with approximately $500 in cash, food stamps and money orders. She was walking in a westerly direction when she noticed defendant walking in the same direction, but on the other side of the street. Defendant then crossed in front of her and stopped her.

Mrs. Calhoun testified that defendant told her, "Miss, this is a stickup." Her initial reaction was one of disbelief. However, when defendant displayed a gun she handed over her purse and shopping bag. Mrs. Calhoun stated that the gun was pointed at her chest. It was stipulated that defendant was 14 to 16 inches from Mrs. Calhoun.

As the defendant fled down the street, Mrs. Calhoun attempted to chase him on foot. Because of traffic, she lost sight of defendant. She was told by a bystander that he saw defendant running with a purse and then get into a Cadillac. Mrs. Calhoun stated that all she saw was the back of the Cadillac and that she did not see defendant inside the car.

Mrs. Calhoun called the police. The police arrived and she told them what had happened, giving them a description of her assailant as being 5'6" to 5'8" tall, wearing blue jeans, a brown leather coat, a blue jeans hat and a beige looking shirt.

The day after the robbery a police officer went to Mrs. Calhoun's home with approximately 25 pictures. She testified that she looked through the pictures and recognized defendant's picture after viewing about half of the pile. On May 23, 1977, Mrs. Calhoun went to the police station to view a lineup. She stated that she identified the defendant in the lineup as the man who robbed her. She also identified defendant at trial.

A Chicago police officer testified that he took 25 photographs to Mrs. Calhoun's home on May 7, 1977. He said that she picked out a picture of defendant after looking at about 15 of the photographs. He also testified that he conducted a lineup on May 23, 1977, which Mrs. Calhoun attended. He stated that she again identified defendant as the man who robbed her.

Defendant testified in his own behalf. He stated that he had been employed at a gas station, working the midnight to 8 a.m. shift. On May 5,

1977, he went home early because he had the flu. He stayed in his mother-in-law's apartment, where he lived, from May 5 to May 7 because of the illness. Defendant testified that he had never seen Mrs. Calhoun until the court proceedings for this case.

Defendant also stated that at one time he co-owned a green Cadillac with his brother. However, he testified that the car had been totaled in an accident in March 1977. A copy of a police report detailed the accident in which the car was involved. Defendant also denied driving a green Cadillac after the accident, specifically denying that he had driven a green Cadillac on April 29, 1977.

Defendant's common-law wife testified that he was home on May 6, 1977, because of his illness. She stated that her husband was home for three days. She also admitted that her husband had owned a green Cadillac in 1977, but stated it had been totaled in an accident in March 1977.

After defendant closed his case in chief, the State called two rebuttal witnesses. These witnesses testified that they saw defendant get into a green Cadillac on April 29, 1977. Each witness further stated that defendant was only a passenger, not the driver.

Defendant then requested a one-day continuance to call a surrebuttal witness, the individual who purchased defendant's wrecked car. This request was denied by the trial court. Both defendant and his wife then testified that they were at a surprise birthday party for the defendant on April 29, 1977.

Defendant claims that his identification as the man who robbed the complaining witness was not proved beyond a reasonable doubt. Specifically, it is argued that the witness' testimony was uncorroborated and inconsistent, there were no other occurrence witnesses and defendant had a corroborated alibi.

The credibility of witnesses, the weight to be given their testimony and the inferences to be drawn therefrom are for the trier of fact and, upon review, courts of review will not substitute their judgment unless it clearly appears there is a reasonable doubt of defendant's guilt. (*People v. Finklea* (1980), 89 Ill. App. 3d 321, 324, 411 N.E.2d 1102.) In *People v. Stringer* (1972), 52 Ill. 2d 564, 569, 289 N.E.2d 631, citing *People v. Watkins* (1970), 46 Ill. 2d 273, 281, 263 N.E.2d 115, the court said:

> "It is also undisputed in Illinois that where the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made. [Citations.]"

A valid identification need not be based upon perfect conditions for

observation nor does the observation have to be of a prolonged nature. *People v. Reed* (1980), 80 Ill. App. 3d 771, 400 N.E.2d 688.

The record shows that Mrs. Calhoun viewed defendant under circumstances which would permit her to later make a positive identification of defendant. She first observed defendant in the currency exchange. Defendant stood in line behind her and another customer before leaving. She noticed defendant for the second time when he was across the street, walking in the same direction as she was. When defendant stopped her, Mrs. Calhoun was then only 14 to 16 inches from his face.

On the day following the incident, Mrs. Calhoun made a positive identification of defendant's picture while viewing police photographs. Two weeks later, she again identified defendant after viewing a lineup. At trial, Mrs. Calhoun was able to positively identify defendant as her assailant.

Defendant, however, claims there were inconsistencies in the witness' testimony in that (1) she could not identify the gun used, (2) she was confused as to the dress of the assailant, and (3) the lineup was suggestive and therefore tainted the in-court identification. Defendant argues that Mrs. Calhoun's description of the gun used in the robbery is inconsistent. During her testimony she described the gun as a gold or silver color. On cross-examination she testified the gun was a shiny silver color and then labeled it white gold. There was no material inconsistency as to the gun.

■■ The alleged shortcomings in Mrs. Calhoun's description of her assailant's dress relate to when he was wearing sunglasses. She was hesitant in responding to a question as to whether defendant was wearing sunglasses in the currency exchange. Defendant claims this shows the witness' confusion during her testimony. After examining the record, we do not believe there was any inconsistency as to this description. Even so, the failure to describe attire with complete accuracy is a minor discrepancy and does not necessarily destroy the credibility of the witness. *People v. Reed; People v. Marbley* (1975), 34 Ill. App. 3d 434, 340 N.E.2d 247; *People v. Carroll* (1973), 12 Ill. App. 3d 869, 299 N.E.2d 134, *appeal denied* (1974), 55 Ill. 2d 602, *cert. denied* (1974), 417 U.S. 972, 41 L. Ed. 2d 1144, 94 S. Ct. 3180.

■■ Defendant's argument that the pretrial identification procedures used in this case are unfair and suggestive is also without merit. It is claimed by defendant that there are discrepancies in the witness' description of his height and the height of those individuals in the lineup. From this he concludes that the lineup was conducted in an unfair and suggestive manner. We have examined the photographs of the lineup, which are part of the supplemental record on appeal, and find nothing unfair about the

lineup. There is no requirement that all of the men in the lineup be physically identical. See *People v. Moore* (1977), 50 Ill. App. 3d 952, 365 N.E.2d 1356; *People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644.

The record discloses that Mrs. Calhoun's identification of defendant as her assailant was positive and unwavering. Based on our review of the record, the evidence presented by the State is not improbable, unconvincing or contrary to human experience. The few inconsistencies disclosed are not of sufficient quality as to raise a reasonable doubt of defendant's guilt. *People v. Bell* (1972), 53 Ill. 2d 122, 290 N.E.2d 214; *People v. Perry* (1974), 21 Ill. App. 3d 18, 315 N.E.2d 173.

■■ Defendant also contends that his alibi evidence could not be disregarded, especially where the evidence contradicting it is the inconsistent testimony of the victim, Mrs. Calhoun. While we recognize this as an accurate statement of a general principle of law, it has no application here because the record reveals no reasonable doubt of guilt by virtue of an uncertain identification. (See *People v. Gardner* (1966), 35 Ill. 2d 564, 221 N.E.2d 232.) Further, the trier of fact is not required to accept alibi testimony over a positive identification of a defendant; this is so even where, as here, the alibi testimony is presented through a greater number of witnesses. *People v. Jackson* (1973), 54 Ill. 2d 143, 295 N.E.2d 462.

Defendant's alibi testimony, along with that of his common-law wife, created an issue of fact for the jury, which was in a better position to determine the credibility of the witnesses, as well as to resolve the conflicts between the testimony of the witnesses. We will not disturb that determination in this case.

■■ Defendant argues that the trial court committed plain error in allowing a police officer to testify to the victim's pretrial identification. We disagree. In *People v. Rogers* (1980), 81 Ill. 2d 571, 579, 411 N.E.2d 223, the court stated:

"To resolve the uncertainty as to the law in this State concerning evidence of out-of-court identification, we set forth herein the rules that should govern the admissibility of such evidence. If a third person were to testify that he saw or heard A identify B as the person who committed the offense, that would obviously and clearly be hearsay testimony and would not be admissible. However, if A testifies that he previously identified B and his veracity is tested by cross-examination, the reason for excluding the third person's testimony has been removed. The third person should then be permitted to testify that he heard or saw A identify B because both A and the third person would be subject to cross-examination concerning the out-of-court identification. Evidence of such out-of-court identification by both A and the third person

should be admissible but should be used only in corroboration of in-court identifications and not as substantive evidence. Before the third person is permitted to testify as to A's identification of B, A should first testify as to his out-of-court identification."

Here, Mrs. Calhoun testified to her out-of-court identification before the police officer testified.

We also disagree with defendant's claim that error was committed by allowing the State to call two rebuttal witnesses who testified that they saw defendant get into a green Cadillac on April 29, 1977. Defendant claims it was error because their testimony related only to a collateral issue.

Rebuttal evidence is that which explains, repeals, contradicts or disproves evidence produced by the accused. (*People v. Bell* (1927), 328 Ill. 446, 159 N.E. 807; *People v. Plair* (1977), 51 Ill. App. 3d 75, 366 N.E.2d 410.) However, such rebuttal evidence may only be used to contradict the defendant's testimony as to a material issue, but not as to a collateral or immaterial matter. (*People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14; *People v. McGhee* (1974), 20 Ill. App. 3d 915, 314 N.E.2d 313.) Furthermore, the admissibility of rebuttal evidence is a matter left to the discretion of the trial court and is subject to review only in cases of clear abuse. *People v. Plair*; *People v. Gentry* (1974), 19 Ill. App. 3d 861, 312 N.E.2d 441.

■■ The testimony in question directly refuted defendant's testimony that he had not driven or been in a green Cadillac since his car was in an accident. It was properly admitted in rebuttal in the discretion of the trial court.

It is next contended that further error was committed in not granting a one-day continuance to enable defendant to bring in a surrebuttal witness. Defendant argues, in essence, that since the State is allowed rebuttal witnesses, he should be allowed a surrebuttal witness. The law is to the contrary. In *People v. Rivera* (1978), 64 Ill. App. 3d 49, 52, 380 N.E.2d 1018, the court said:

"* * * When reviewing the exercise of discretion in the denial of a continuance to obtain the presence of a witness, this court must determine whether defendant acted diligently (*People v. Timms* (1978), 59 Ill. App. 3d 129, 375 N.E.2d 1321; *People v. Robinson* (1973), 13 Ill. App. 3d 506, 301 N.E.2d 55); whether the witness' testimony is material and could have affected the outcome of the case (*People v. Arndt* [(1972), 50 Ill. 2d 390, 280 N.E.2d 230]; *People v. DeMary* (1967), 37 Ill. 2d 364, 227 N.E.2d 361); and whether defendant's right to a fair trial has been prejudiced (*People v. Lott* (1977), 66 Ill. 2d 290, 362 N.E.2d 312; *People v.*

*Kane* (1975), 31 Ill. App. 3d 500, 333 N.E.2d 247; *People v. Banks* (1974), 19 Ill. App. 3d 857, 312 N.E.2d 332)."

Here, defendant was aware that the State could call the rebuttal witnesses; their names appeared on the State's witness list. The only contact made with the defendant's proposed witness came at an earlier trial involving defendant. No communication with the witness concerning his testifying in this case had been made until the second day of trial. Defense counsel, who was even uncertain of the witness' name, was not sure the witness would be able to or want to come in and testify. These circumstances indicate a lack of diligence in securing the attendance of this witness at the trial.

In addition, defendant failed to show that the witness' testimony was vital to his defense. The surrebuttal witness was the man who bought defendant's wrecked Cadillac as junk. The trial judge found that this testimony as to this particular point was cumulative and related to a secondary matter. The absence of a witness whose testimony would corroborate only collateral aspects of a defendant's testimony has not been considered sufficient justification for a continuance. See *People v. Rivera* (1978), 64 Ill. App. 3d 49, 53, citing *People v. Edwards* (1973), 55 Ill. 2d 25, 302 N.E.2d 306, *cert. denied* (1974), 415 US. 928, 39 L. Ed. 2d 486, 94 S. Ct. 1438.

■■ We find that no prejudice was occasioned to defendant in the denial of his motion for a continuance. In light of the testimony and identification by the victim, the outcome of this cause would not have been different had the surrebuttal testimony been received. The denial of defendant's motion for continuance was not an abuse of discretion.

■■ Defendant's final contention is that he was denied his right to a proper sentencing hearing because the trial judge failed to specify the reasons that led to the sentencing determination. (See Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(c).) At the sentencing hearing, the State presented evidence of prior felony convictions and the parole record of defendant. Defendant's sentence of 10 years for armed robbery is 4 years greater than the minimum sentence for that crime. (Ill. Rev. Stat. 1979, ch. 38, pars. 18—2 and 1005—8—1(3).) There has been no showing by defendant that he has, in fact, been prejudiced by the judge's omission and there is no indication that the sentence imposed would have been different had the court specified its reasons for the sentence. (*People v. Brown* (1980), 89 Ill. App. 3d 852, 412 N.E.2d 580.) The omission of procedures in a sentencing hearing, which amounts to a technical or formal error, without prejudice to the defendant, does not require remedying. (*People v. Taylor* (1980), 82 Ill. App. 3d 1075, 403 N.E.2d 607.) We also note that defendant did not object to the trial judge's omission. This operates as a

waiver of this issue on appeal. *People v. McCrimmon* (1967), 37 Ill. 2d 40, 224 N.E.2d 822, *cert. denied* (1967), 389 U.S. 863, 19 L. Ed. 2d 131, 88 S. Ct. 120.

The conviction and sentence of the circuit court of Cook County are affirmed.

Affirmed.

CAMPBELL, P. J., and GOLDBERG, J., concur.