THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ORVILLE MILLER, Defendant-Appellant.

First District (3rd Division)    No. 79-1545

Opinion filed November 12, 1981.

James J. Doherty, Public Defender, of Chicago (Emily Eisner and Aaron L. Meyers, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

Following a jury trial, Orville Miller, the defendant, was found guilty of the attempt murder and aggravated battery of Garfield Johnson. The defendant was sentenced to an extended term of 60 years in prison for both offenses to be served consecutively with a term of 100 to 200 years in prison for a prior murder conviction.

On appeal, the defendant contends that he was denied a fair trial because: (1) the State introduced irrelevant and prejudicial evidence of gang association; (2) the prosecutor improperly referred to the convictions of the other co-defendants;[1] (3) the court permitted evidence to bolster the testimony of the complaining witness; (4) the court permitted improper rebuttal evidence; (5) the State created the impression that the defendant was guilty of prior criminal behavior; (6) the prosecutor made improper closing argument; and (7) the defense was not allowed to discredit the testimony of the complaining witness. The defendant also contends that he was not proved guilty beyond a reasonable doubt and that he was sentenced improperly to a consecutive rather than a concurrent term of imprisonment.

---

[1] The co-defendants were Teddy Parrish, David Lattimore (also referred to as David Latimer), and Ricky Bell (also referred to as Rickey Bell). Orville Miller was tried separately.

At trial, Opel Johnson, the victim's sister, testified that on November 8, 1975, at about 6 p.m., she was talking with some friends in a park. Teddy Parrish began to talk to her. As she was walking with Parrish, he pointed a gun at her side and led her into the front entrance of a building. He took her money and began to fondle her clothes. She began to cry and fought off his attempt to take her clothes off. Shortly thereafter, Opel escaped and returned home. She told her brother, Garfield, that Teddy had a gun and had taken her money. Opel testified that she had known Teddy Parrish for a couple of months and had seen him with the defendant, Rudy and Ricky Bell, David Lattimore and "Sundown" (William Doyle) in the area of 89th and Cottage Grove.

Garfield Johnson testified that on November 8, 1975, his sister told him that Teddy Parrish had a gun and had taken her money. At approximately 8:20 p.m. Garfield went with Reginald Vaughn to a liquor store on 90th and Cottage Grove. Teddy Parrish was standing in front of the store and David Lattimore was sitting in a car nearby. While Reginald went into the store, Garfield asked Teddy for his sister's money and searched Teddy's pockets. Garfield then walked across the street to a candy store.

When Garfield walked out of the store, he saw Parrish, Lattimore, Ricky Bell and the defendant standing in front of the store. As he began to walk, they followed him. Garfield testified that the defendant grabbed his right shoulder and shot him in the left shoulder. Garfield turned around and saw Parrish and the defendant with guns. Lattimore and Ricky then tried to put him on the hood of a car. Garfield was shot in the back four or five times by the defendant and Parrish as he was on his stomach on the car hood. He then slid off the car to the ground and was shot four or five more times by the defendant and Parrish. The four assailants then got into the defendant's car and drove away.

Garfield further testified that on the way to the hospital and at the hospital he told the police the names of the men who shot him. On cross-examination he stated that during a prior proceeding he testified that he did not see Parrish shooting him when he was on his stomach on the car hood and that he may have given the police the name "Michael" Lattimore instead of David Lattimore.

Investigator James Doyle of the Chicago Police Department testified that at approximately 8:30 p.m. on November 8, 1975, he transported Garfield Johnson to the hospital. Garfield told Doyle that he had been shot by "Bimbo" and Lattimore.

Investigator Peter Dignan of the Chicago Police Department testified that at 10 p.m. on November 8, 1975, at Jackson Park Hospital, he was told by Garfield Johnson that "Bimbo," Teddy, David Lattimore and Ricky Bell had shot him. Garfield told Dignan that "Bimbo" was Orville Miller.

As a defense witness, Vickie Nichols testified that she went to the D & J Variety Store located at 8950 South Cottage Grove on the night of November 8, 1975, between 7:15 and 7:30 p.m. In the store at that time were Hank Andrews, George Carter, Orville Miller, Rudy Bell and Jerry Streety. The defendant was a friend of her boyfriend, George Carter. She did not see the defendant with a gun that night. She stated that between 7:45 and 8 p.m. Garfield Johnson and Reginald Vaughn entered the store. Garfield made a purchase and left with Vaughn. Shortly thereafter, gunshots were heard and she and the defendant went outside with Andrews, Carter and Rudy following. Garfield was lying on the ground near the curb and Vaughn was standing over him.

Nichols testified that she had not discussed the shooting with any police officers. She knew the defendant had been charged with the offense a couple of months after the shooting. She stated that William Doyle, nicknamed "Sundown," had approached her two weeks before the trial and asked her to talk to the defendant's attorneys. Nichols testified that Doyle had not threatened her or influenced her testimony.

The second alibi witness, Jerry Streety, testified that he was working at the D & J Variety Store on November 8, 1975. That evening a person came into the store and said someone had been shot. Vickie Nichols, George Carter, Rudy Bell and the defendant were present in the store at that time. Rudy and the defendant left the store and drove away in the defendant's car. Streety further testified that he had not given this information to any State's Attorney or the police and had not talked to defense counsel until a week and a half before trial. Streety said that he had been visited by "Sundown," who had asked Streety to see the defendant's attorneys. About a week later, "Sundown" and Carter visited Streety again to ask him to see the defense counsel.

At the conclusion of the trial, the defendant was convicted of attempt murder and aggravated battery. His motion for a new trial was denied.

I

The defendant first argues on appeal that he was denied a fair trial because the State repeatedly introduced irrelevant and prejudicial evidence of gang association.[2]. The defendant contends that gang association was implied when the State asked Opel Johnson who she saw Teddy Parrish with and when the State asked Garfield Johnson "[w]ho else did David Lattimore associate with besides Teddy?" The defendant argues that additional glaring references to gang affiliation occurred during the State's cross-examination of Vickie Nichols and Jerry Streety when the following questions were posed:

---

[2] At the start of the trial, defense counsel made a motion in limine to preclude the State from introducing evidence of gang association. The trial judge denied this motion.

"Q: "Now, Lattimore, Parrish and the Bell brothers, George Carter, Hank Andrews and Orville Miller all hang out there at 90th and Cottage Grove, don't they?"

Q: "That's their place, right?" (Objection sustained.)

Q: "[Does Sundown] also hang around 90th and Cottage Grove?"

Q: "He [Sundown] was of the same organization [as] all these people were, wasn't he?" (Objection sustained.)

Q: "Well, did George Carter, Orville Miller belong to the same organization?" (Objection sustained.)

Q: "Did Orville Miller and your—and George Carter, did they ever wear any trinkets?" (Objection sustained.)

Q: "[The people that hung around the store] they were gang, weren't they?" (Objection sustained.)

Q: "And Sundown used to hang out with Orville Miller, didn't he?"

Q: "They are part of that group that used to hang out at 90th and Cottage Grove?"

Q: "Did they have a name for their group?" (Objection sustained.)

Q: "Any other [phrases used by the defendant] stand out in your mind?"

The defendant argues that the above-listed questions were designed to inform the jury that the defendant belonged to a gang and to draw upon the jury's prejudices that gang members are more likely to commit heinous crimes.

In a criminal trial, the State may not bring forth evidence which only serves to cause the jury to believe a defendant to be a bad person, and hence likely to be guilty of the crime charged. A defendant's guilt must be established by " 'competent evidence, uninfluenced by bias or prejudice raised by irrelevant evidence, or by unjustified aspersions or insinuations tending to inflame the minds of the jury.' " *(People v. Oliver* (1972), 3 Ill. App. 3d 872, 279 N.E.2d 363.) However, evidence which is relevant and otherwise admissible need not be excluded because it may also have a tendency to prejudice the defendant. *People v. Oliver.*

■■ ■ Proof of gang membership is admissible if that membership is related to the crime charged. *(People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658.) In *People v. McMurray* (1972), 6 Ill. App. 3d 129, 285 N.E.2d 242, *cert. denied* (1973), 411 U.S. 918, 36 L. Ed. 2d 310, 93 S. Ct. 1554, the court allowed evidence of gang membership to explain the circumstances surrounding the shooting of a police officer who was a member of the gang intelligence unit. We believe a similar situation is present in the case at bar and that evidence of the defendant's associations was relevant and

probative. Garfield Johnson testified that he was attacked by four individuals—Teddy Parrish, David Lattimore, Ricky Bell and the defendant. Shortly before the attack, Garfield had been involved in a confrontation with Parrish. There was no evidence of animosity or confrontation between Garfield and the other three men. Thus, evidence that the defendant was a friend of Lattimore and Ricky Bell and that the three men had associated with Parrish was relevant to show their motive for becoming involved in a dispute between Parrish and Garfield.

Similarly, we believe evidence of William Doyle's (Sundown's) association with the defendant was relevant to explain why he visited the defendant's alibi witnesses before the defendant's trial. While we do not believe that the testimony regarding these visits created an impression in the minds of the jury that the witnesses had been intimidated with threats of violence, as the defendant contends, we are of the opinion that this testimony was relevant to the issue of the witnesses' credibility.

## II

The defendant also contends that he was denied a fair trial due to repeated references to the prior trial of Teddy Parrish, David Lattimore and Ricky Bell in connection with the attack upon Garfield Johnson. The defendant points to the State's cross-examination of Vickie Nichols regarding her presence in court during the summer of 1978[3] at "the trial of Parrish and Bell." The objection to this questioning was sustained and the jury was instructed to disregard it. The defendant contends that the jury also was advised that the other three men had been convicted when the prosecutor asked Nichols if she had visited the Bell brothers in jail and when in rebuttal argument the prosecutor stated:

> "[Prosecutor]: Where is Theodore Parrish? Illinois Department of Corrections." (Objection sustained.)

> "[Prosecutor]: Where is David Lattimore?" (Objection sustained.)

■■ It is well settled that evidence of an alleged accomplice's conviction for an offense for which the defendant is being tried is inadmissible to prove the guilt of the defendant. (*People v. Sullivan* (1978), 72 Ill. 2d 36, 377 N.E.2d 17.) In the instant case, however, the jury was never advised directly that Lattimore, Parrish and Ricky Bell had been tried and convicted of the attack upon Garfield Johnson. While the State produced evidence that the three men were incarcerated, the reasons for their incarcerations were never established since defense counsel appropriately objected to the State's line of questioning and the objections were sustained. Therefore, we believe that no error was committed by the reference to the prior trial of the co-defendants. Reversal also is not

---

[3] The defendant's trial occurred in January of 1979.

warranted since the defendant, himself, initiated questioning regarding the prior court proceedings. During cross-examination Opel Johnson was asked and answered that she first told the State's Attorney that Parrish had tried to rob her when she attended court in July. Also, in an impeachment attempt by defense counsel, Garfield Johnson was questioned about his testimony in another trial in July of 1978. Finally, in closing argument, defense counsel stated that arrest warrants had been procured for the defendant, Ricky Bell, and David Lattimore but not Teddy Parrish. The defendant cannot complain where he has opened the door and invited comment on inadmissible evidence. *People v. Agee* (1980), 85 Ill. App. 3d 74, 405 N.E.2d 1245; *People v. Kitchen* (1977), 53 Ill. App. 3d 521, 368 N.E.2d 528.

## III

The defendant next contends that the court improperly admitted the testimony of Investigators Doyle and Dignan regarding Garfield Johnson's identification statements. The defendant relies on *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363, which held that a witness may not testify as to out-of-court statements he made for the purpose of corroborating his in-court testimony.

■■ Our supreme court has recently held in *People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223, that the general rule pronounced in *Clark* does not apply to statements of identification. The court in *Rogers* held that evidence of out-of-court identifications by both the identifying witness and a third person who saw or heard the identification is admissible for the limited purpose of corroborating the in-court identification. Such corroboration is justified to rebut the notion that "by the time of trial, the witness' mind has become so conditioned that there is little likelihood that he would not identify the person in court." (81 Ill. 2d 571, 578, 411 N.E.2d 223, 227.) In reliance upon *Rogers*, we therefore hold that the testimony of Investigators Doyle and Dignan, regarding Garfield's out-of-court identification of the persons who shot him, is admissible to corroborate Garfield's in-court identification.

■■ We also note, as the trial court so held, that the testimony of the police investigators was admissible as Garfield Johnson's spontaneous utterances. (*People v. Crawford* (1962), 23 Ill. 2d 605, 179 N.E.2d 667; see *People v. Olmos* (1978), 67 Ill. App. 3d 281, 384 N.E.2d 853; *People v. Buckley* (1976), 43 Ill. App. 3d 53, 356 N.E.2d 1113.) The statements related to the circumstances of an occurrence that was sufficiently startling and that would produce a spontaneous and unreflecting statement due to an absence of time to fabricate. *People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164; *People v. DeArmond* (1972), 5 Ill. App. 3d 831, 284 N.E.2d 474.

## IV

The fourth issue raised by the defendant is that the court permitted improper rebuttal evidence.

At trial, defense witness Streety testified that he had not discussed the shooting of Garfield Johnson with the police or the State's Attorney. Over objection, the State was permitted in rebuttal to introduce a stipulation that the defense had failed to disclose the address of Streety during discovery.

■■ Rebuttal evidence is evidence that explains, repels, contradicts or disproves evidence produced by the accused. (*People v. Plair* (1977), 51 Ill. App. 3d 75, 366 N.E.2d 410.) Rebuttal evidence may be used only to rebut the defendant's evidence as to a material issue, but not as to a collateral or immaterial matter. (*People v. Williams* (1981), 96 Ill. App. 3d 958, 422 N.E.2d 199; *People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14.) The State argues that the rebuttal evidence in the instant case was admitted properly to explain Streety's testimony that he had not been questioned by law enforcement officials prior to trial. We believe this rebuttal evidence was irrelevant to any material issues presented and, thus, was erroneously admitted. However, we will not reverse defendant's conviction on this basis as the defendant has not shown how he was prejudiced by this erroneous admission of evidence.

## V

The defendant next contends that the State improperly created the impression that the defendant was guilty of prior criminal behavior. The defendant cites the State's cross-examination of Vickie Nichols concerning her presence in court in the summer of 1978 during the trial of Teddy Parrish and Ricky Bell and the State's re-cross-examination, wherein the prosecutor asked:

"[Prosecutor]: When you said Orville Miller was standing trial, that's incorrect. He didn't stand trial in '78?

Nichols: I came to the Court and he was standing trial—

The Court: Just a minute.

The question was, was he standing trial in 1978 when you came to Judge Garippo's courtroom? Yes or no.

Nichols: Yes.

[Prosecutor]: Well, that was in March of '78, wasn't it?

The Court: I'l [*sic*] not going to let you go any further."

The defendant also cites closing argument wherein the prosecutor referred to Nichols' failure to talk to defendant's attorneys at the trial in the summer of 1978.

Based on the above-stated questions and comments by the prosecutor, the defendant argues that the jury was led to believe that the defendant

either had been tried previously in the summer of 1978 for the shooting of Garfield Johnson or was on trial at that time for another offense. We find no merit to this argument as the record does not contain specific references to prior convictions or offenses committed by the defendant. The inferences that the defendant asks this court to draw clearly are not sustained by the record.

## VI

The sixth issue raised by the defendant concerns alleged improper closing argument by the State. Specifically, the defendant contends that the prosecutor shifted the burden of proof when he stated:

> "Sundown [William Doyle] is going out and grabbing up some witnesses at the last second because we have to prepare—we have got to put something on. We can't just sit there."

The defendant argues that this statement created an inference of guilt and suggested to the jury that the defendant had to prove his innocence by putting alibi witnesses on the stand. As no objection was made by the defendant to this comment at trial, the error, if any is waived. (*People v. Daniels* (1979), 76 Ill. App. 3d 646, 395 N.E.2d 163.) Furthermore, we reject the inferences suggested by the defendant and find that the prosecutor's comments were based on the evidence presented at trial. *People v. Hawkins* (1980), 88 Ill. App. 3d 178, 410 N.E.2d 309.

■■ The defendant also contends that the State committed error by insinuating that the complaining witness was threatened concerning his testifying in court. During rebuttal the prosecutor stated that Garfield Johnson was courageous and had not shirked his responsibility to testify even though he had been visited by "Sundown," Teddy Parrish and David Lattimore. Again the prosecutor's comments were based on the evidence. The thrust of the comment, taken as a whole, was to emphasize the credibility of the complaining witness, which had been attacked during defense counsel's closing argument.

■■ The third prosecutorial comment alleged to be error by the defendant was the prosecutor's reference to the defendant as a "yellow coward." In this same context the prosecutor also stated that the defendant and Ricky Bell, David Lattimore and Teddy Parrish were cowards, "[b]ut together, give them a couple of guns and they are men." The defendant contends that this latter comment, in addition to being an improper opprobrium and denunciation, was an attempt to create the image of gang membership. We disagree. The prosecutor's comments do not suggest gang activity or membership. The prosecutor merely sought to reflect unfavorably on the defendant by saying that, without support, the defendant was cowardly. An unfavorable description of a defendant is not improper or

reversible error. *People v. Hovanec* (1979), 76 Ill. App. 3d 401, 394 N.E.2d 1340.

The final rebuttal comments alleged to be error by the defendant were the prosecutor's characterization of the defendant's case as fraudulent and accusations that defense counsel perpetrated a fraud by presenting the testimony of Vickie Nichols and by referring incompletely to prior court proceedings during impeachment attempts of Garfield Johnson.

Accusations of fraud and suborning perjury are improper commentary that only serve to arouse the antagonism of the jury. (*People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295; *People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19; *People v. Martin* (1975), 29 Ill. App. 3d 825, 331 N.E.2d 311.) Where the evidence is close and conflicting so that it is impossible to determine the effect of these improper comments on the jury deliberations, a new trial must be granted. *People v. Freedman* (1954), 4 Ill. 2d 414, 123 N.E.2d 317; *People v. Martin*; see *People v. Tedder* (1980), 83 Ill. App. 3d 874, 404 N.E.2d 437 (no new trial when clear and convincing evidence).

■■ A review of the record in the case at bar indicates that the prosecutor did commit error in his characterizations of defense tactics as fraudulent. We cannot say, however, that the defendant was substantially prejudiced by these remarks, nor can we conclude that the jury's verdict would have been different had the remarks not been made. Therefore, a new trial will not be ordered. See *People v. Porter* (1981), 96 Ill. App. 3d 976, 422 N.E.2d 213.

## VII

The defendant's seventh argument is that he was denied a fair trial because he was not allowed to discredit the testimony of Garfield Johnson. Johnson had testified on cross-examination that he did not have a weapon when he went to the area where he was shot. The defendant during his case in chief sought to elicit testimony from Vickie Nichols and Jerry Streety that they had seen Johnson with a gun on the night of the shooting. The State's objection to this line of questioning was sustained.

■■ The defendant argues that the excluded testimony was highly relevant to show Johnson's vengeful attitude and bias toward his alleged attackers and to undermine the State's case by exposing serious doubt about the complainant's story that he had been unjustifiably attacked. We disagree with this contention and find that the excluded testimony was irrelevant to the case at bar. The testimony would not have indicated an interest, bias or motive by Johnson to testify falsely against the defendant. Unlike the circumstances in *People v. Coles* (1977), 55 Ill. App. 3d 528, 371 N.E.2d 259, *modified* (1979), 74 Ill. 2d 393, 385 N.E.2d 694, a case cited by the defendant, the evidence that the defendant sought to admit

would not have shown a reason for animosity between the defendant and Johnson. Nor does the fact that Johnson may have carried a gun on the night of the shooting discredit Johnson's testimony that he was shot unjustifiably and without provocation by the defendant.

## VIII

The eighth issue raised by the defendant is whether he was proved guilty of attempt murder and aggravated battery beyond a reasonable doubt. The defendant bases this contention on the strong alibi testimony as compared to Garfield Johnson's inconsistent testimony and weak identification of the defendant.

The credibility of witnesses and the weight to be given their testimony is to be determined by the trier of fact. (*E.g., People v. Williams* (1981), 96 Ill. App. 3d 958, 422 N.E.2d 199; *People v. Richard* (1980), 88 Ill. App. 3d 247, 410 N.E.2d 459.) Courts of review may not substitute their judgment for that of the trier of fact unless the evidence is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. (*E.g., People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) It is undisputed that where the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under circumstances as would permit a positive identification to be made. (*E.g., People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666; *People v. Robinson* (1980), 88 Ill. App. 3d 96, 410 N.E.2d 331.) Furthermore, minor conflicts and inconsistencies in testimony do not destroy the credibility of a witness. Precise consistency as to collateral matters is not required to establish guilt beyond a reasonable doubt. *People v. Reed* (1980), 84 Ill. App. 3d 1030, 405 N.E.2d 1065.

After reviewing the evidence in the instant case, we find that the defendant was proved guilty beyond a reasonable doubt. Garfield Johnson's identification of the defendant was positive. He testified that he saw the defendant immediately before he was shot. After he was shot in the shoulder, Garfield turned around and again saw the defendant with a gun. Garfield testified that after he slid off the car hood, with his back on the ground, he saw the defendant shoot him again. The fact that Garfield knew the defendant before the shooting further strengthens his identification. *People v. Robinson.*

■■ Defendant argues that contradictions between Garfield's testimony at trial and statements he made to the police officers shortly after the shooting and conflicting testimony as to whether or not he had seen his girlfriend at the scene of the shooting render his trial testimony untrust-

worthy. In view of the fact that Garfield had undergone a traumatic experience at the time of the shooting (*People v. Henderson* (1976), 36 Ill. App. 3d 355, 344 N.E.2d 239), we find that these inconsistencies do not make his testimony so incredible or improbable as to raise a reasonable doubt of the defendant's guilt. The contradictions cited by the defendant were weighed in favor of Johnson, and we will not substitute our judgment for that of the trier of fact. (*People v. Williams* (1979), 71 Ill. App. 3d 547, 390 N.E.2d 32.) Similarly, we will not interfere with the jury's rejection of the alibi defense as the jury was in a better position to determine the credibility of the defense witnesses. The trier of fact is not required to accept alibi testimony over a positive identification of the defendant. *People v. Williams* (1981), 96 Ill. App. 3d 958, 422 N.E.2d 199.

## IX

The final argument raised in this appeal is that the trial judge improperly ordered that the defendant's 60-year sentence for the attempt murder of Garfield Johnson be served consecutively with a sentence of 100 to 200 years received previously for an unrelated offense.

Section 5—8—4(b) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—4(b)) provides:

"The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record."

The decision to sentence an offender to consecutive terms is discretionary with the trial court. (*People v. Rose* (1979), 75 Ill. App. 3d 393, N.E.2d 698; *People v. Reed* (1977), 51 Ill. App. 3d 479, 366 N.E.2d 1137.) A consecutive sentence should only be imposed when the court determines that it is required to protect the public from further criminal conduct by the defendant. *People v. Henry* (1977), 47 Ill. App. 3d 545, 362 N.E.2d 117.

Prior to February 1, 1978, the basis for imposing a consecutive sentence, *i.e.*, the public's protection, need not have been set forth in the record. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—4(b); see *People v. Snyder* (1979), 77 Ill. 2d 459, 397 N.E.2d 799.) The amended statute requires that the trial judge set forth the basis so as to enable reviewing courts to determine whether the sentencing decision was consistent with the statutory objectives. *People v. Green* (1980), 83 Ill. App. 3d 982, 404 N.E.2d 930.

■■ The record in the instant case shows substantial compliance with this requirement even though the trial judge did not specifically say that

consecutive imprisonment was necessary for the public good. (See *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) During sentencing the trial court noted that within 10 years of his conviction in the present case the defendant had been convicted of murder, for which he was currently serving an extensive sentence. The trial judge noted that the attempt murder offense against Garfield Johnson was exceptionally brutal and heinous as the victim, a young man, was left paralyzed and had lost normal bodily functions. While it is true that the court discussed these factors in the context of sentencing the defendant to an extended term (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—5—3.2(b)), the factors also were relevant to the consecutive sentence determination. We believe that the record supports a conclusion that the consecutive sentence was required to protect the public from further criminal conduct by the defendant and find no abuse in the sentence imposed.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI, P. J., and WHITE, J., concur.