THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CALVIN CLARK *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 82—2414 and 83—381, cons.

Opinion filed November 26, 1984.—Rehearing denied January 17, 1985.

James J. Doherty, Public Defender, of Chicago (R.H.R. Silvertrust, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Edward A. Stephens, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

After a jury trial, judgment was entered on defendants' convictions of attempted murder and murder. Defendant Kent Clark was sentenced to concurrent terms of imprisonment of 40 years for murder and 20 years for attempted murder. Calvin Clark and Dwayne Moorehead were each sentenced to concurrent terms of 35 years for murder and 20 years for attempted murder. On appeal, defendants contend: (1) They were denied their right to present a defense and confront witnesses, and (2) they were not proved guilty of murder beyond a reasonable doubt.

We affirm.

Sharvis Pipes, Bobby Pipes and Leroy Morffett suffered gunshot wounds during a shooting incident which occurred at about 7 p.m. on March 23, 1982, in the 1500 block of South Drake in Chicago. Leroy Morffett died in April 1982. In addition to the charges of attempted murder and aggravated battery arising from the shooting of Sharvis and Bobby Pipes, defendants were also charged with the murder of Leroy Morffett.

At trial, Geneva Morffett, wife of the deceased, testified that as she and her husband stepped onto the porch of their home, she saw a large crowd standing nearby and heard several gunshots. A bullet grazed her left arm, and her husband was shot in the abdomen. Mr. Morffett was hospitalized because of his injury and was released from the hospital on April 9, 1982. Mrs. Morffett did not see the gunman.

Brian Ashford and Terrence Harris testified they were playing basketball in the alley behind the 1500 block of South Drake when four men walked past them. Ashford recognized all three defendants, and Harris recognized Kent Clark. The four men stopped where Thomas Harris and Kewane Smith were playing basketball. Ashford testified that Kent Clark placed a gun to Thomas Harris' head. Ashford and Harris saw the four men run into a gangway toward Drake Street. Both witnesses testified they heard gunfire shortly thereafter and ran home.

Thomas Harris testified that on the evening in question, he was playing basketball in the alley with Kewane Smith. Kent and Calvin Clark and two other men ran towards them. Kent Clark aimed a gun at Harris and told him he would shoot if Harris moved. Kent Clark then followed the other three men through a gangway. As Harris ran home, he heard about ten gunshots.

David LeFlore testified that prior to the incident he was standing in front of 1510 South Drake with Sharvis and Bobby Pipes and about 15 other people. Defendants and a fourth person appeared from a gangway and began firing gunshots into the crowd. Each defendant carried a gun. Bobby Pipes was injured and taken to the hospital.

Sharvis Pipes testified a crowd had gathered to watch a fight among several girls. Calvin Clark, Dwayne Moorehead and another person ran from the gangway. Clark and Moorehead were carrying guns. About 15 shots were fired, one of which struck Pipes in his leg. Police took Pipes to the hospital, where he identified Calvin Clark as one of the gunmen. Later at the police station, he identified Moorehead.

Bobby Pipes was also among those who had gathered on the

street on the evening in question. He testified that at 7 p.m., Calvin and Kent Clark and two other people ran towards the crowd and began firing guns. Bobby Pipes was shot in his left arm and required surgery to remove the bullet.

Officer Henry Jackson testified he interviewed Sharvis Pipes at Mount Sinai Hospital. Pipes stated he was shot by defendant Calvin Clark. Officer John Kohles testified that after speaking to Sharvis Pipes and Officer Jackson at the hospital, he returned to the scene of the crime, spoke to Kent Clark, and took Kent Clark and two others to the hospital. Sharvis Pipes could not identify any of the three. Later that evening, Sharvis Pipes identified Calvin Clark and Dwayne Moorehead.

Dr. Robert Kirschner conducted a post-mortem examination on Leroy Morffett on April 18, 1982. His internal and external exams revealed that Morffett had suffered recent gunshot wounds to his abdomen, small intestine, colon and liver. The immediate cause of death was the presence of two blood clots in the pulmonary arteries. Kirschner explained that blood clots in the major blood vessels of the lungs completely prevent blood circulation in the lungs and cause immediate heart failure and death. Kirschner testified that the gunshot wound, surgery and prolonged convalescence caused the clots to form. They initially formed in the victim's left leg and traveled to his lungs.

Defendant Dwayne Moorehead testified he was at home between 5:30 and 8:35 p.m. on the evening in question. He denied involvement in the shooting incident. Defendant's mother Katherine Moorehead, his sisters Patricia and Jacqueline Moorehead, and his aunt Acerlean Moorehead corroborated defendant's testimony.

Defendant Calvin Clark testified that he left his girlfriend's house at 4:30 p.m. He arrived home at about 6:15 p.m. and spoke to his girlfriend 10 minutes later. He denied being present when the crime took place. His girlfriend, Darlisa Miller, corroborated his testimony. His sister, Vivian Clark, and his brother, Charles Clark, testified defendant was home from shortly after 6 p.m. until police arrested him.

Defendant Kent Clark testified he and his friends Dwayne Cook and Raymond Ford were taken into custody at 7:30 p.m. on March 23, 1982. Police took them to the emergency room at Mount Sinai Hospital. Sharvis and Bobby Pipes were in the emergency room and Sharvis told police that Calvin Clark was one of the gunmen. Kent Clark further testified he knew Terrence and Thomas Harris well. He did not see either of them on the evening in question and did not participate in the crime.

Brenda Clark, Kent Clark's girlfriend, testified that she lived

about 2½ blocks from the scene of the shooting. Her brother Dwayne and defendant Kent Clark were at her home from 5 p.m. until 7:10 p.m. on the day in question playing cards with her. James Cook, Brenda's father, corroborated the testimony that defendant was at the Cook residence between 5 and 7 p.m.

Defendants were found guilty of attempted murder and aggravated battery of Sharvis and Bobby Pipes and the murder of Leroy Morffett. The trial court vacated defendants' convictions of aggravated battery upon a finding that they merged into the attempt convictions.

■ On appeal, defendants first contend they were denied their constitutional right to present a defense and confront witnesses where the trial court granted the State's motion *in limine* to prevent defendants from testifying or questioning witnesses about membership in street gangs. They maintain the evidence was relevant to the issue of credibility.

In opposing the State's oral motion in the trial court, defendants argued that one of the Pipes was a member of a gang which had been involved in an altercation with defendants earlier on the day in question. To retaliate against defendants, the victims deliberately lied about the identities of their assailants. Additionally, defendants argued that evidence of the victims' gang membership was an important factor for the jury to consider in assessing the credibility of the witnesses. After reviewing a preliminary hearing transcript in which one of the victims apparently admitted gang membership, the trial court granted the State's motion. It found that gang membership was irrelevant to any issue in the case.

Before granting a motion *in limine*, the trial court must be certain that such action will not unduly restrict the opposing party's presentation of its case. (*People v. Phillips* (1981), 95 Ill. App. 3d 1013, 420 N.E.2d 837, citing *Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 416 N.E.2d 268.) Nevertheless, the use of such motions is encouraged in criminal cases to exclude collateral or extraneous matters. (*People v. Trolia* (1982), 107 Ill. App. 3d 487, 437 N.E.2d 804.) The decision to limit cross-examination is within the discretion of the trial court, and a conviction will not be reversed unless the trial court's decision resulted in manifest prejudice to the accused. *People v. Trolia* (1982), 107 Ill. App. 3d 487, 437 N.E.2d 804.

In this case, we find no abuse of discretion. As noted by the trial court, the primary issue in the case was identification, and the relevancy of the victims' gang membership to this issue was highly speculative. Furthermore, defendants were not precluded from presenting

evidence of the altercation which allegedly took place earlier in the day and which allegedly motivated the victims to intentionally misidentify their assailants, but defendants chose not to introduce such evidence. Under these circumstances, defendant cannot claim prejudice. See *People v. Grady* (1982), 107 Ill. App. 3d 970, 438 N.E.2d 608.

■ Second, defendants contend they were not proved guilty of murder beyond a reasonable doubt where the State failed to prove a causative relationship between the gunshot wound and the pulmonary embolism causing Leroy Morffett's death. They argue that Dr. Kirschner's conclusion on the cause of death was not supported by medical facts and was thus insufficient to prove causation.

The State is not required to prove that defendants' acts were the sole and immediate cause of death; rather, it is sufficient to show that the acts were a contributing cause such that death did not occur from a source unconnected with defendants' acts. (*People v. Schreiber* (1982), 104 Ill. App. 3d 618, 432 N.E.2d 1316; *People v. Brown* (1973), 9 Ill. App. 3d 730, 293 N.E.2d 1.) Here, Dr. Kirschner testified his autopsy revealed that Morffett had suffered serious gunshot wounds. He detailed the surgical repairs required by the injuries and stated that prolonged bed rest is required after such surgery. Kirschner further testified that a person who has suffered injuries requiring surgery and prolonged convalescence may develop blood clots which ultimately cause his death. This evidence was sufficient to prove that death occurred from a source connected with defendants' acts.

Defendants rely on *People v. Brown* (1978), 57 Ill. App. 3d 528, 373 N.E.2d 459, in support of their argument. In *Brown*, the court reversed a murder conviction because the State failed to prove a relation between defendant's act and the cause of death. The court held that reversal was required because there was no evidence of an autopsy, no description of the physical condition of the deceased at the time of death, and no explanation of the reasons for the cause of death. Unlike *Brown*, the State in this case elicited evidence of an autopsy, the physical condition at the time of death, and the reasons underlying the cause of death. Thus, Brown is inapposite.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.