Kent CLARK, Petitioner–Appellant,

v.

Michael O'LEARY and Attorney General of the State of Illinois, Respondents–Appellees.

No. 87–2801.

United States Court of Appeals, Seventh Circuit.

Argued May 20, 1988.

Decided July 25, 1988.

Rehearing and Rehearing en banc Denied Aug. 24, 1988.

Edward W. Feldman, Northwestern Univ. Legal Clinic, Chicago, Ill., for petitioner-appellant.

Kenneth A. Fedinets, Office of the Illinois Atty. Gen., Chicago, Ill., for respondents-appellees.

Before CUMMINGS and POSNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

After being convicted in a state court jury trial for murder and attempt murder, petitioner Kent Clark was sentenced to concurrent terms of 40 years and 20 years respectively. The convictions were affirmed on appeal. *People v. Clark*, 129 Ill.App.3d 374, 84 Ill.Dec. 677, 472 N.E.2d 814 (1st Dist.1984). The Supreme Court of Illinois declined review, and a few months thereafter a habeas corpus petition was filed in the district court by this inmate of the Illinois Department of Corrections. This appeal is from the denial of the writ.

■ Of course, limitations in cross-examination may be applied as long as a jury has available to it sufficient information to make a "discriminatory appraisal of the witness's motives and bias." *United States v. DiCaro*, 852 F.2d 259, 260 (7th Cir.1988); *United States v. Robinson*, 832 F.2d 366, 373 (7th Cir.1987); *United States v. Wellman*, 830 F.2d 1453, 1465 (7th Cir. 1987). Here the state trial court granted the State's motion *in limine* to exclude all reference to gang affiliation, thus preventing the defense's use of cross-examination to attack the credibility of government witnesses whose testimony solely linked petitioner to the crime. We conclude that this refusal of the trial court to permit questioning regarding the alleged bias and motive springing from the witnesses' membership in or affiliation with a rival street gang violated the confrontation clause of the Sixth Amendment, a trial error that was not harmless beyond a reasonable doubt. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986).

I

As noted below, resolution of Clark's claims requires a close analysis of the trial record. Petitioner's convictions arose from a shooting incident which occurred on March 23, 1982, at about 7 p.m., in the 1500 block of South Drake Street, Chicago, Illinois. Sharvis Pipes, Bobby Pipes, Geneva Morffett,[1] and Leroy Morffett all suffered gunshot wounds, and Leroy eventually died in April of 1982.[2] Petitioner, his brother

1. Both petitioner and the district court spelled this name "Morfett." But a review of the transcript taken at the state court trial indicates that

when asked how to spell her last name, Geneva answered "M-o-r-f-f-e-t-t" (R. 98).

2. On appeal, Clark does not question the medical proof of the causation of Morffett's death, so

Calvin, and Dwayne Moorehead were arrested that evening, and the initial police reports taken at that time described the shooting as gang-related (R. 10). At the beginning of the trial, however, the State orally asked for a motion *in limine* to exclude all reference to gang affiliation (R. 7).

Petitioner's counsel opposed the motion and argued that the Pipes were members of the Conservative Vice Lords, a Chicago street gang. Defendants were said to be members of a rival gang. Both gangs were allegedly involved in an earlier altercation on that day. To retaliate against petitioner and his co-defendants, the victims supposedly deliberately lied about their attackers' identities. The defense theory articulated by petitioner's counsel was based on alibi, and since the only evidence to place petitioner at the crime came from these victims, they allegedly had a motive to lie. Bias and prejudice thus emanated from this inter-gang animosity. The defendants also claimed that evidence of gang membership was an important factor for the jury to consider in assessing the witness' credibility.

Upon its review of a preliminary hearing transcript where one victim openly admitted his gang membership, the trial court found that gang affiliation was irrelevant and then granted the State's exclusion motion. The following colloquy was representative of the argument on the motion *in limine:*

THE COURT: Well, then, that being the issue, what would gang affiliation have to do with the issues in the case? ... That has to do, usually, with the motive.

\* \* \* \* \* \*

MR. WOOD (counsel for Mr. Clark): You answered exactly what I was going to represent; that the complainant, that is, the State's witnesses admit that they are gang members, and it's not a question of identity because ... the primary witnesses in behalf of the State claim to know, and to have known previously, the defendants. So it's not identity....

And it is therefore, my position that their admission ... is that this is a motive to lie, not in terms of identification, but an outright lie.

\* \* \* \* \* \*

THE COURT: But it's all irrelevant.

\* \* \* \* \* \*

THE COURT: The question is one of identification, not who belonged to what gang.

(R. 9–14). This argument on the motion continued, and the trial court insisted that petitioner's counsel provide specific evidence concerning gang membership. Counsel for petitioner then recounted the alleged altercation which occurred earlier in the day:

MR. WOOD: [B]ecause there are some other circumstances that will develop, that happened earlier that day, that led up to this. That led up to this shooting. That the jury, as the trier of fact ... is entitled to know this aspect of any witness ... so that they could evaluate and determine how much weight should be given to this particular witness' testimony.

\* \* \* \* \* \*

THE COURT: It has nothing to do with —you see, the issue in this case, is—the issues are identification and credibility. That's what it is. It has nothing to do with gangs.

MR. WOOD: Credibility, your Honor. You just hit it. It has nothing to do with identity.

THE COURT: Well, gang membership, even though, it probably should be a felony, it isn't. And so—and it is nothing that—that affects one's credibility.

\* \* \* \* \* \*

MR. WOOD: I'm speaking of an incident that happened a few hours earlier between the defendant and members. And I have to review my facts ... [but] it is my contention, that they would have a motive of lying against the [defendant] Clark boys, by saying that they are—

that we do not pass on the sufficiency of the evidence regarding contributing cause. See

*People v. Brackett,* 144 Ill.App.3d 442, 98 Ill.Dec. 488, 494 N.E.2d 610 (5th Dist.1986).

that is, the Pipes boys, the State's witnesses, that we are members of the Conservative Vice Lords.... And that the Clark boys are members of some other rival gang. And, therefore, that is the motive to lie, to get some members of the rival gang.

THE COURT: That's exactly what I proposed to you, that there is a—here, a reference to opposing gang membership. And on that basis, is possible that they would lie, because of this gang rivalry. But, that is not any part of the evidence or the issues in this case.

And so, the Motion in Limine is granted, and there will be no mention of gang membership.

(R. 76–78).

The trial then began, and the facts as adduced at trial and presumed as accurate under 28 U.S.C. § 2254(d); *Sumner v. Mata*, 455 U.S. 591, 597–598, 102 S.Ct. 1303, 1306–1307, 71 L.Ed.2d 480 (1982); *Walton v. Lane*, 852 F.2d 268, 269 (7th Cir.1988), were summarized by the Illinois Appellate Court and were as follows:

Geneva Morffett, wife of the deceased [Leroy Morffett], testified that as she and her husband stepped onto the porch of their home, she saw a large crowd standing nearby and heard several gunshots. A bullet grazed her left arm and her husband was shot in the abdomen. Mr. Morffett was hospitalized because of his injury and was released from the hospital on April 9, 1982. Mrs. Morffett did not see the gunman.

Brian Ashford and Terrence Harris testified they were playing basketball in the alley behind the 1500 block of South Drake when four men walked past them. Ashford recognized all three defendants and Harris recognized Kent Clark. The four men stopped where Thomas Harris and Kewane Smith were playing basketball. Ashford testified that Kent Clark placed a gun to Thomas Harris' head. Ashford and Harris saw the four men run into a gangway toward Drake street. Both witnesses testified they heard gunfire shortly thereafter and ran home.

Thomas Harris testified that on the evening in question, he was playing basketball in the alley with Kewane Smith. Kent and Calvin Clark and two other men ran towards them. Kent Clark aimed a gun at Harris and told him he would shoot if Harris moved. Kent Clark then followed the other three men through a gangway. As Harris ran home, he heard about ten gunshots.

David LeFlore testified that prior to the incident he was standing in front of 1510 South Drake with Sharvis and Bobby Pipes and about 15 other people. Defendants and a fourth person appeared from a gangway and began firing gunshots into the crowd. Each defendant carried a gun. Bobby Pipes was injured and taken to the hospital.

Sharvis Pipes testified a crowd had gathered to watch a fight among several girls. Calvin Clark, Dwayne Moorehead and another person ran from the gangway. Clark and Moorehead were carrying guns. About 15 shots were fired, one of which struck Pipes in his leg. Police took Pipes to the hospital where he identified Calvin Clark as one of the gunmen. Later at the police station, he identified Moorehead.

Bobby Pipes was also among those who had gathered on the street on the evening in question. He testified that at 7 p.m., Calvin and Kent Clark and two other people ran towards the crowd and began firing guns. Bobby Pipes was shot in his left arm and required surgery to remove the bullet.

Officer Henry Jackson testified he interviewed Sharvis Pipes at Mount Sinai Hospital. Pipes stated he was shot by defendant Calvin Clark. Officer John Kohles testified that after speaking to Sharvis Pipes and Officer Jackson at the hospital, he returned to the scene of the crime, spoke to Kent Clark, and took Kent Clark and two others to the hospital. Sharvis Pipes could not identify any of the three. Later that evening, Sharvis Pipes identified Calvin Clark and Dwayne Moorehead.

\* \* \* \* \* \*

Defendant Kent Clark testified he and his friend Dwayne Cook and Raymond Ford were taken into custody at 7:30 p.m. on March 23, 1982. Police took them to the emergency room at Mount Sinai Hospital. Sharvis and Bobby Pipes were in the emergency room and Sharvis told police that Calvin Clark was one of the gunmen. Kent Clark further testified that he knew Terrence and Thomas Harris well. He did not see either of them on the evening in question and did not participate in the crime.

Brenda Clark, Kent Clark's girl friend testified that she lived about 2½ blocks from the scene of the shooting. Her brother Dwayne and defendant Kent Clark were at her home from 5 p.m. until 7:10 p.m. on the day in question playing cards with her. James Cook, Brenda's father, corroborated the testimony that defendant was at the Cook residence between 5 and 7 p.m.

*People v. Clark*, 129 Ill.App.3d 374, 375–377, 84 Ill.Dec. 677, 472 N.E.2d 814, 815–817 (1st Dist.1984).

Throughout the trial, petitioner's counsel constantly requested the court to reconsider its ruling excluding evidence on gang affiliation (R. 77, 153–154, 251). But each time, the court refused to permit any reference to gangs, one time stating in regard to the pervasive influence of gangs:

THE COURT: That is a general situation that existed in probably half the geographical area of this city.... And it's all irrelevant to the issues in most of the cases. The fact that that is, it has nothing to do with it. The issues here are credibility and it has nothing to do with general gang membership with credibility.

(R. 251–252).

On closing argument, the prosecution was permitted to impugn the character of Clark and his alibi witnesses, but Clark was not similarly allowed to attack the State's witnesses regarding bias and prejudice regarding any potential gang affiliation. The State maligned the bias of petitioner, his girlfriend, and her father, stating "You have to take a look at the motive and you have to consider that reality says family members will come in and testify on behalf of their loved ones" (R. 683).

II

This appeal is based on an alleged violation of the Sixth Amendment, which guarantees criminal defendants the right to confront any witnesses testifying against them. Confrontation's role in the adversary system is clear. As one commentator has recently noted,

"Confrontation allows for the adversarial testing of evidence. A fundamental principle of our adversary system maintains that a factfinder should normally not rely on the words of a witness until the opponent has had the chance to test and challenge that witness's abilities to narrate the truth. Cross-examination is, of course, the tool used to test and challenge, and is therefore a core component of an adversary system which grants the accused the right to cross-examine the state's witnesses."

Jonakait, *Restoring the Confrontation Clause to the Sixth Amendment*, 35 U.C. L.A. L.Rev. 557, 586 (1988).

■ A defendant therefore exercises the right to confrontation primarily by cross-examining witnesses. *Davis v. Alaska*, 415 U.S. 308, 315–316, 94 S.Ct. 1105, 1109–1110, 39 L.Ed.2d 347 (1974); *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965); *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). The Supreme Court further has recognized that "[C]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis*, 415 U.S. at 316, 94 S.Ct. at 1110; accord *Kentucky v. Stincer*, ___ U.S. ___, 107 S.Ct. 2658, 2663–2664, 96 L.Ed.2d 631 (1987); *United States v. DiCaro, supra*, 852 F.2d at 261. *Davis* went on to hold that a state rule preventing cross-examination about the bias of a prosecution witness violated the defendant's confrontation right, for "defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credi-

bility, could appropriately draw inferences relating to the reliability of the witness." 415 U.S. at 318, 94 S.Ct. at 1111; cf. *Delaware v. Fenster*, 474 U.S. 15, 22, 106 S.Ct. 292, 296, 88 L.Ed.2d 15 (1985) ("[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to prove and expose infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony").

■ If a defendant exercises the right to cross-examination, he must be permitted to test both the credibility of the witness and the witness' knowledge of the defendant's guilt or innocence. *Davis*, 415 U.S. at 316–317, 94 S.Ct. at 1110–1111; compare *United States v. Jones*, 766 F.2d 412, 414–415 (9th Cir.1985) (trial court abused discretion in limiting cross-examination of witness about bias arising from defendant's rebuff of witness' homosexual advances; not harmless error because "reasonable possibility" that inability to cross-examine witness for bias materially affected verdict) with *United States v. Muelbl*, 739 F.2d 1175, 1184–1186 (7th Cir.1984) (no confrontation clause violation to limit cross-examination about government witnesses' alleged long-standing drug relationship with defendant, because jury had sufficient information to make discriminating appraisal of witnesses' motives and biases), certiorari denied, 469 U.S. 982, 105 S.Ct. 388, 83 L.Ed.2d 322.

■ The Supreme Court has said that its confrontation cases may involve some restrictions imposed by the trial court on the scope of cross-examination. *Delaware v. Fenster*, 474 U.S. 15, 18, 106 S.Ct. 292, 294. A judge properly may limit cross-examination if the questions are either irrelevant, see *United States v. Jackson*, 836 F.2d 324, 326 (7th Cir.1987) (testimony regarding defendant's divorce marginally relevant regarding extraneous issues), or collateral. See *United States v. Balistrieri*, 779 F.2d 1191, 1216–1217 (7th Cir.1985) (no abuse of discretion to limit cross-examination of government agent witness' knowledge of collateral matters and undisclosed informa-

tion in highly sensitive telex sealed by trial court), certiorari denied, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 573; *United States v. Muelbl*, 739 F.2d at 1184–1185.

Recently the Supreme Court reversed the Ninth Circuit Court of Appeals and held that the fact of a witness' membership in a gang in the penitentiary was relevant to show the anti-prosecution bias members of that gang had and that he may be testifying as a result of bias in favor of the defendant. *United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). The Ninth Circuit had held that the witness' membership was irrelevant and prejudicial to the defendant's case. The Supreme Court ruled that bias is always relevant and that bias may be induced by a witness' like, dislike or fear of a party. The fact that the witness and the defendant belonged to the same gang, the Supreme Court held, supported the inference that his testimony was slanted or even fabricated in the defendant's favor.

In *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the Court held that a trial judge's denial of defendant's opportunity to impeach a prosecution witness for bias violated the confrontation clause but the error was harmless beyond a reasonable doubt. There the trial judge refused to allow defense counsel to cross-examine a prosecution witness about an agreement the witness made to speak with the prosecutor concerning the defendant's murder case in exchange for the dismissal of an unrelated criminal charge (being drunk on the highway) pending against the witness. *Id.* 106 S.Ct. at 1434. The defendant was convicted. The Delaware Supreme Court reversed the murder conviction on appeal, holding that the trial judge's decision deprived the defendant of his right to confrontation. *Id.* The state supreme court refused to consider the State's argument that because the witness' testimony was cumulative and unimportant, the confrontation clause error was harmless beyond a reasonable doubt. *Id.*

■ In vacating and remanding the state court judgment, the Supreme Court cited

several of its decisions applying the harmless error standard to confrontation clause cases and observed that the denial of the opportunity to cross-examine an adverse witness does not always fit within the category of constitutional errors deemed prejudicial. *Id.* at 1436–1438. Thus a reviewing court must determine whether, assuming that the damaging potential of the improperly prohibited cross-examination was fully realized, the error was nonetheless harmless beyond a reasonable doubt. *Id.* at 1438. The factors that we, as an appellate court, are to weigh in determining whether an error was harmless, include the importance of the testimony to the prosecution's case, the extent to which the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, and the overall strength of the prosecution's case. *Id.;* see also *Gaines v. Thieret,* 846 F.2d 402 (7th Cir.1988) (harmless error analysis). In addition, to be harmless error, the evidence supporting the defendant's guilt, separate from the constitutional error, must be "overwhelming." *Burns v. Clusen,* 798 F.2d 931, 943 (7th Cir.1986).

■■■■ This case comes to this Court on habeas review of Clark's state convictions for murder and attempt murder. To obtain federal habeas relief, state prisoners such as Clark must show that their confinement violates a federal right derived from the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a) (1982). An alleged violation of the Sixth Amendment confrontation clause is always a cognizable issue for federal habeas review. See *Jackson v. Scully,* 781 F.2d 291, 294–295 (2d Cir.1986); *Ellis v. Black,* 732 F.2d 650, 656 (8th Cir.1984). This principle is balanced with the rule that petitions alleging general improprieties during a state trial are not cognizable unless the error resulted in a fundamentally unfair proceeding that violated the petitioner's due process rights.

■■■ Without mentioning *United States v. Abel, supra,* the district court noted that there was little law on the precise question of whether the gang affiliation of a witness

is per se admissible to prove bias whenever the person against whom he testified is a member of a rival gang. The court attempted to distinguish Clark's situation from that of the defendant in *People v. Gonzalez,* 104 Ill.2d 332, 84 Ill.Dec. 457, 472 N.E.2d 417, 418–420 (1984), a remarkably similar Illinois case which originated before the same state trial judge as in this case. We find *Gonzalez* persuasive, and hence review it in detail.

In *Gonzalez,* a jury in the Circuit Court of Cook County found the defendant, Freddie Gonzalez, guilty of murdering Michael Rodriguez, and sentenced him to a prison term of 35 years. The Appellate Court of Illinois reversed the conviction and remanded the cause for a new trial, holding *inter alia* that the trial court's ruling forbidding any reference to gang membership improperly limited the defendant's cross-examination of David Alonso, one of the two occurrence witnesses. 120 Ill.App.3d 1029, 76 Ill.Dec. 393, 458 N.E.2d 1047 (1st Dist. 1983).

Reviewing this decision, the Illinois Supreme Court held that

the trial court's ruling that "[t]here is to be no reference to gang affiliations in this case" improperly limited the defendant in cross-examining Alonso as to his bias or motive to testify falsely. The right to cross-examine a witness as to his biases, prejudices, or ulterior motives is protected by both the Federal and Illinois constitutions. (U.S. Const., amend. VI, XIV; Ill. Const. 1970, art. I, sec. 8; see *Davis v. Alaska* (1974), 415 U.S. 308, 315–317 [94 S.Ct. 1105, 1109–1111, 39 L.Ed.2d 347] ). As the Supreme Court noted in *Davis,* "[t]he partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' [Citation.] * * * [T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." (415 U.S. 308, 316–317 [94 S.Ct. at 1110–1111].) This court has held that the widest latitude should be given the defense on cross-examina-

tion when trying to establish a witness' bias or motive. *People v. Wilkerson* (1981), 87 Ill.2d 151, 156 [57 Ill.Dec. 628, 429 N.E.2d 526].

\* \* \* \* \* \*

Questions regarding Alonso's gang activities and threats against the defendant were clearly relevant to the reliability of Alonso's testimony, and should have been allowed. Illinois courts have often held questions regarding gang affiliation proper when the State has sought to introduce evidence of the defendant's gang activities, in spite of the risk of prejudice to the defendant. (See, *e.g., People v. Miller* (1981), 101 Ill.App.3d 1029, 1033–1035 [57 Ill.Dec. 358, 428 N.E. 2d 1038]; *People v. Garcia* (1978), 65 Ill.App.3d 472 [22 Ill.Dec. 51, 382 N.E.2d 371].) Simple justice requires a symmetrical rule that allows a defendant to ask such questions on cross-examination to show bias in a State's witness. *People v. Gonzalez*, 104 Ill.2d 332, 337–338, 84 Ill.Dec. 457, 472 N.E.2d 417. The court further held that restricting the defendant's cross-examination of Alonso was not harmless error. *Id.* Similarly in *Stevens v. Bordenkircher*, 746 F.2d 342, 347 (6th Cir.1984), the court of appeals concluded that the trial court's failure to permit cross-examination of a key witness about his prejudice or motive was not harmless error because the jury was thus prevented from making a discriminatory appraisal.

The Illinois Supreme Court's focus in *Gonzalez* on the principles of *Davis* is equally applicable to this case, in particular its mentioning that "[t]he partiality of a witness is subject to exploration at trial and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" *Davis*, 415 U.S. at 316, 94 S.Ct. at 1110 (quoting 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970)). Under *Davis*, to permit the jury to make an informed judgment, defense counsel must be permitted to present its bias evidence within the context of the defense theory. *Id.* at 311, 94 S.Ct. at 1107. Because the defense theory here was based on alibi, the potential motive of the State's witnesses to fabricate their alleged observation of petitioner at the scene of the crime had to be examined. The relevance of any gang affiliation of identification witnesses would be apparent, for besides any allegiance to other members, the potential threat of physical reprisals for testifying otherwise certainly could have motivated these witnesses to concoct a story to "get" rival gang members petitioner and his co-defendants. Yet no such questions regarding threats were permitted.

The trial court here wrested the role of factfinder from the jury by preliminarily screening the credibility of the witnesses, stating "Well, gang membership, even though it probably should be a felony, isn't. And so—and it is nothing that—that affects one's credibility." (R. 77). This assertion of the court was a constitutional error, permitting the State to present its case without having its only observation witnesses properly confronted.

The district court justified its holding that there was no constitutional error here by requiring specific reasons from petitioner why the fact of gang affiliation had to be admitted (Pet.App. A–11). Yet that assertion impinges directly upon the Supreme Court's reasoning in *Alford:*

> To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial.

282 U.S. at 692, 51 S.Ct. at 219. Additionally, the Court in *Alford* explicitly stated that cross-examination into a witness' potential bias must be permitted "even though [defense counsel] cannot state to the court what facts a reasonable cross-examination might develop." *Id.;* see also *Burr v. Sullivan*, 618 F.2d 583 (9th Cir. 1980). Furthermore, our review of the discussions regarding the motion *in limine* demonstrate that more than enough evidence supported the defense theory of potential lying of State witnesses.

Having found that there was indeed error in limiting cross-examination regarding gang-related bias of the State's witnesses,

this Court now must apply the *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), harmless-error analysis to determine if the error was harmless beyond a reasonable doubt. This depends upon the host of factors discussed earlier, see *supra* at p. 1005, but reiterated here, including:

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Van Arsdall*, 106 S.Ct. at 1438. The district court in this case found that there was no constitutional error here and

> [i]f there were error, the question of whether it is, beyond a reasonable doubt, harmless, is often a troubling question, but the correct answer is yes. Five witnesses identified petitioner and of them only one, it was offered, is a gang member. Indeed the other purported gang member did not identify petitioner as an offender. The evidence in this case was strongly contested but it is clear beyond a reasonable doubt that proof that one of the five witnesses against petitioner was a member of a rival gang would have no effect on the outcome of this trial. This conclusion is valid without consideration of the fact that in order to use effectively this evidence, petitioner would have had to admit his own membership in a street gang, an admission that could well damage his own case. If this additional fact is considered the finding of harmless error is compelled.

(Pet.App. A11–12). To illustrate our disagreement with the lower court's conclusion on harmless error, we undertake the following *Van Arsdall* analysis:

All the identity witnesses' testimony in this case was crucially important, for it was the only evidence that linked petitioner to the scene of the crime. Accordingly, their necessarily demonstrated credibility was vital for the State to prove its case.

The trial judge here, however, did not allow for any cross-examination on the potential bias or motive to lie on the basis of gang affiliation or threats. The questioning of these important witnesses on those grounds certainly could have prejudiced or damaged the State's case, and thus the jury as trier of fact did not have all relevant information before it sufficiently to assess credibility.

The second *Van Arsdall* factor is whether the testimony is merely cumulative. If so, courts can restrict cross-examination as to bias. *Van Arsdall*, 106 S.Ct. at 1435; *United States v. Ferguson*, 776 F.2d 217, 222–223 (8th Cir.1985). In this case there is no way that any cross-examination regarding bias to lie came before the jury, for defense counsel simply was not permitted to inquire into any gang-related animosity. Cumulativeness of testimony is thus irrelevant to this case. Cf. *United States v. Fitzgerald*, 579 F.2d 1014, 1021 (7th Cir. 1978), certiorari denied, 439 U.S. 1002, 99 S.Ct. 611, 58 L.Ed.2d 677.

The presence or absence of evidence either corroborating or contradicting the testimony of the identity witnesses on material points is a relevant factor here. The State relied entirely on the witnesses to place petitioner at the scene of the crime without impeaching his alibi defense, which contradicted the State witnesses' prior testimony. Petitioner's inability to discredit these witnesses regarding their potential to lie was a grave error.

The fourth criterion is the extent of the cross-examination otherwise permitted. The main focus of the defense questioning was the State witnesses' reasons to fabricate their story. Petitioner's counsel was not allowed to examine regarding the potential hostility or prejudice against petitioner and thus only a routine cross on the witnesses' perception, recall, and possible prompting by the State was permitted (R. 199–208; 212–217; 226–258; 266–293; and 300–324). As *Davis* guides this Court, such limited cross-examination might have encouraged the jury to think "that defense counsel was engaged in a speculative and baseless line of attack." 415 U.S. at 318,

94 S.Ct. at 1111. The limited questioning permitted in this case was inadequate to allow the jury to evaluate properly the State witnesses' credibility.

Finally, the overall strength of the prosecution's case was weak without these witnesses' allegations. While petitioner was precluded from impeaching them regarding an essential matter of their credibility, the State was not likewise restricted. The district court on review of petitioner's claims held that there was harmless error since only one of the State's witnesses was affected by gang affiliation. Yet counsel for petitioner here was completely precluded from sufficiently articulating his theory that each witness who identified petitioner was either a gang member or induced to fabricate his story due to gang influence.

The error in excluding any cross-examination of witnesses on potential gang affiliation or influence was not harmless in light of the *Van Arsdall* factors. This Court therefore reverses the district court's judgment and will grant the petition for writ of habeas corpus unless the State chooses to retry Clark in 120 days. The State should advise us of its choice.