1 F.3d 1242
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony ANDERSON, John Kendricks, Defendants-Appellants.
 Nos. 92-4010, 92-4052.
 United States Court of Appeals, Sixth Circuit.
 July 29, 1993.
 
 Before MILBURN and JONES, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants-Appellants Anthony Anderson and John Kendricks (collectively referred to as the "Defendants") appeal the district court's denial of their suppression motions. The Defendants also appeal the court's decision, at the suppression hearing, to limit cross-examination of one of the officers conducting the search. Anderson appeals the district court's refusal to grant a two-level reduction for acceptance of responsibility pursuant to the United States Sentencing Commission's Guidelines Manual, Sec. 3E1.1 (1991) [hereinafter U.S.S.G.]. For the reasons stated herein, we affirm the district court's rulings.
 
 I.
 
 2
 On March 26, 1992, a three-count indictment was filed against Anderson, Kendricks, and Kendricks' girlfriend, Vanetta Long. Count one charged the three with conspiring to distribute and to possess with the intent to distribute in excess of fifty grams of cocaine base, in violation of 21 U.S.C. Secs. 841(a)(1) (1988), 841(b)(1)(A)(iii) (1988 & Supp.III 1991), and 846 (1988). Count three charged the three with possessing with the intent to distribute in excess of fifty grams of cocaine base, in violation of Sections 841(a)(1) and 841(b)(1)(A)(iii), and 18 U.S.C. Sec. 2 (1988). Long was separately charged in count two with maintaining a house for the use or storage of a controlled substance, in contravention of 21 U.S.C. Sec. 856(a)(2) (1988) and Section 2.
 
 
 3
 All three defendants filed motions to suppress evidence. The district court held a hearing on the motions on June 15, 1992. The following evidence was presented at the hearing:
 
 
 4
 On February 16, 1992, four Columbus, Ohio police officers approached a residence at 780 South 22nd Street in order to execute an outstanding arrest warrant for Kendricks. The officers decided to go to the residence because it was rented by Long and because Kendricks had been seen in the area. Kendricks testified that he had a key to the residence and that he slept over four to five nights a week. One officer, Ronald Moss, approached the residence, knocked on the door, and conversed through the door with an individual he knew to be Anderson. Kendricks testified that Anderson was an infrequent visitor to the residence. Long testified that Anderson was a friend who, on that day, brought a plate of food to Kendricks and was playing Nintendo when the police arrived. Officer Moss informed Anderson that he wished to speak with Kendricks. Soon thereafter, Kendricks came to the door and spoke with Officer Moss on the front porch.
 
 
 5
 Officer Moss then signaled the other officers to approach and assist in arresting Kendricks. According to Moss, after informing Kendricks that there was an outstanding warrant for his arrest, but prior to handcuffing Kendricks, Officer Moss asked Kendricks if he could search the residence. Officer Moss testified that Kendricks said to "[g]o ahead." J.A. at 165. Kendricks testified that Officer Moss' question came after Officer Moss had handcuffed him. Officer Alcott testified that he heard Kendricks say in response to Officer Moss' request that "I have nothing to hide." Id. at 219. Both officers testified that their weapons were not drawn at any time during the arrest and encounter with Kendricks on the porch. Officer Alcott testified that a total of three officers were on the porch.
 
 
 6
 After receiving Kendricks' consent to search, Officer Moss approached the door, opened the screen door, and spoke to Long, who was standing in the doorway. According to Officer Moss' testimony, he was given permission to search the residence by Long. Officer Alcott testified that he heard Long give her consent to the search. Although Kendricks was on the porch when Long allegedly consented to the search, at the hearing, Kendricks denied giving his consent to search and he denied hearing Long consent.
 
 
 7
 Officer Moss testified that after Long consented to the search, he entered the residence. Long accompanied him on the search and helped him look in the kitchen by opening cabinets. During the search, Officer Moss observed cocaine base in two dresser drawers in an upstairs bedroom.
 
 
 8
 Officer Moss then secured the residence and awaited the arrival of a search warrant. Before acquiring the warrant, he recorded the following conversation:
 
 
 9
 OFFICER MOSS: ... Ma'am, I want you to understand, okay? You mean, when we came up to the house we did ask for permission to search in the house; is that correct? Yes or no?
 
 
 10
 MISS LONG: Yes.
 
 
 11
 OFFICER MOSS: Okay. Did we use force or intimidate you in asking you? I can't hear you.
 
 
 12
 MISS LONG: No.
 
 
 13
 Id. at 242.
 
 
 14
 After acquiring the search warrant, the officers removed two bags of cocaine base, weighing 115.4 and 27.1 grams respectively. The officers also removed a triple-beam scale from the room in which the cocaine was located, and upon which Anderson's fingerprints were found.
 
 
 15
 During the hearing, Kendricks attempted to cross-examine Officer Moss regarding his purported warrantless searches of Kendricks on numerous occasions dating from 1989. The district court refused to permit this line of questioning.
 
 
 16
 After the hearing, the district court denied the suppression motions. The court held that the search was permissible because it was a valid consensual search. The court found that both Kendricks and Long consented to the search. The court also found that the evidence adduced at the hearing indicated that Anderson had no privacy interest in the premises or in the particular drawers that were the source of the evidence.
 
 
 17
 Following the district court's denial of their motions to suppress, each Defendant entered a conditional guilty plea which reserved the right to appeal the denial of their suppression motions. Both Kendricks and Anderson pled guilty to the possession with intent to distribute charge. Kendricks was sentenced on September 18, 1992. Anderson was sentenced on September 25, 1992. At Anderson's sentencing hearing, the district court denied his request for a two-level reduction for acceptance of responsibility. The district court sentenced him to 121 months of imprisonment and five years of supervised release.
 
 II.
 
 18
 The Defendants first argue that the trial court erred in finding that Kendricks and Long consented to the search of Long's residence. They argue that the consents either were not given or were given involuntarily. With regard to the contention that consent was not given, they rely on Kendricks' testimony that he did not give consent and that he did not hear Long give consent. In addition, they contend that Long did not give consent. They note that even the taped conversation between Long and Officer Moss does not disclose that Long actually consented to the search. With regard to their second contention, they argue that because Kendricks allegedly was asked to consent after he was placed under arrest and because of Long's age (nineteen) and the presence of numerous officers, their consents were involuntary. They also note that the officers never instructed them that they could withhold their consents.
 
 
 19
 This court reviews for clear error a district court's factual findings made during the consideration of a motion to suppress evidence. United States v. Williams, 962 F.2d 1218, 1221 (6th Cir.), cert. denied, 113 S.Ct. 264 (1992); United States v. Duncan, 918 F.2d 647, 650 (6th Cir.1990), cert. denied, 111 S.Ct. 2055 (1991). In addition, a district court's decision that consent was voluntary "is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). This decision is also reviewed for clear error. United States v. Rose, 889 F.2d 1490, 1494 (6th Cir.1989).
 
 
 20
 The district court made detailed findings of fact regarding this consent issue. With regard to whether consent was given, the court noted that both Officers Moss and Alcott heard Kendricks and Long respond positively to Officer Moss' request to search. The court further found the testimony offered by Officers Moss and Alcott to be credible and the testimony offered by Kendricks and Long to be not credible. We find that ruling not clearly erroneous.
 
 
 21
 With regard to the voluntariness of the consents, the district court found that while it was true that neither of the individuals was advised of his/her right to refuse Officer Moss' request to search the residence, all of the evidence indicated that the search was voluntary. The court stated:
 
 
 22
 Other evidence which confirms this is the fact that Miss Long accompanied Officer Moss as he searched the premises, and she assisted him by opening doors of cupboards and opening drawers, and so forth, and the Court finds that testimony also to be credible.
 
 
 23
 J.A. at 274.
 
 
 24
 Although the age of the consenter, evidence of duress and coercion, and lack of warnings regarding the accused's constitutional rights are relevant factors to consider when deciding the voluntariness question, see, e.g., United States v. Jones, 846 F.2d 358, 360 (6th Cir.1988), we find, as the district court found, that the totality of the circumstances in this case indicates that the consent was voluntary. We note that both Kendricks and Long consented separately and independently of each other. In addition, we note that Long assisted the officers in the search by opening doors and drawers for them. Therefore, while the Defendants argue that the age of Long, the number of officers present, and the failure of the officers to inform Kendricks and Long that they could refuse the search made the consent involuntary, we hold that the district court's ruling on the voluntariness of the consent is not clearly erroneous.
 
 III.
 
 25
 Defendant Anderson argues that he had a reasonable expectation of privacy in the searched premises and that Kendricks and Long's consents do not apply to him.
 
 
 26
 The factual findings that support the legal conclusion that a defendant lacks a legitimate expectation of privacy in the searched premises are reviewed for clear error. United States v. McNeal, 955 F.2d 1067, 1072 (6th Cir.), cert. denied, 112 S.Ct. 3039 (1992). To have a legitimate expectation of privacy in the invaded place, "[t]he defendant must satisfy a two-part test: 1) whether he manifested a subjective expectation of privacy in the object of the challenged search; and 2) whether society is prepared to recognize that expectation as legitimate." United States v. Sangineto-Miranda, 859 F.2d 1501, 1510 (6th Cir.1988) (citation omitted).
 
 
 27
 Anderson first contends that he had a legitimate expectation of privacy because he was a house guest, because it was getting late, and, because he has an obsession with playing Nintendo, he likely would have spent the night. In a similar case, we held that a defendant did not have a subjective expectation of privacy in the apartment in which he was arrested because he did not own or rent the apartment and did not have a key. Id. Despite the defendant's assertion that he intended to spend the night (which a magistrate judge disbelieved) and the fact that he was sleeping on a couch when the police arrived, we held that the defendant was merely a casual visitor with no legitimate expectation of privacy in the apartment. Id.
 
 
 28
 Using Sangineto-Miranda as a guide, we hold that the district court did not err in finding that Anderson had no reasonable expectation of privacy in the searched premises. Anderson did not rent or own the apartment, did not own a key to the apartment, and had not even been invited to spend the night.
 
 
 29
 Anderson also argues that because he clearly was a co-conspirator with Kendricks and Long, he had the same dominion, control, and expectation of privacy in the residence as Kendricks.[1] This claim is without merit because merely being a co-conspirator does not confer an expectation of privacy in the area to be searched. See United States v. Padilla, 113 S.Ct. 1936, 1939 (1993) (In automobile search case, "[e]xpectations of privacy and property interests govern the analysis of Fourth Amendment search and seizure claims. Participants in a criminal conspiracy may have such expectations or interests, but the conspiracy itself neither adds nor detracts from them."); see also United States v. Hunter, 550 F.2d 1066, 1074 (6th Cir.1977).
 
 
 30
 Because we hold that Anderson had no legitimate expectation of privacy in the residence or the drawers, we refrain from considering whether Kendricks and Long's consents were applicable to him.
 
 IV.
 
 31
 The Defendants next argue that the district court erred by not permitting certain cross-examination of Officer Moss during the suppression hearing. During the cross-examination of Officer Moss by Kendricks' counsel, Officer Moss was asked when he first had contact with Kendricks. The government objected to this question. Kendricks stated to the court that he sought to question Officer Moss concerning incidents of alleged illegal searches and seizures occurring in prior contacts with Kendricks. The court sustained the objection and did not permit Officer Moss to be cross-examined regarding prior incidents with Kendricks. The court stated, "We are not going to try any other cases." J.A. at 183. Thereafter, Kendricks made a lengthy proffer. The essence of the proffer was that on numerous occasions beginning in 1989, Officer Moss allegedly approached the residence on 780 South 22nd Street and searched the individuals on the porch (including Kendricks) without probable cause and without a warrant. Following the proffer, the district court made a lengthier statement:
 
 
 32
 Let me make this observation. I have excluded that evidence because I think it is collateral to the issue involved here, but even if the Court were to have heard all of the evidence contained in the proffer, it would still conclude that on this occasion, based on the evidence I heard, the search was conducted pursuant to a voluntary consent again of both of these defendants. In that regard, I found that Mr. Kendricks' credibility to be lacking, and I can't imagine that this other evidence would have changed that result.
 
 
 33
 Id. at 275.
 
 
 34
 Generally, the district court has wide discretion in restricting the scope of cross-examination. United States v. Faymore, 736 F.2d 328, 334 (6th Cir.), cert. denied, 469 U.S. 868 (1984); see Clark v. O'Leary, 852 F.2d 999, 1004 (7th Cir.1988) ("[a] judge properly may limit cross-examination if the questions are either irrelevant or collateral") (citation omitted). We review such evidentiary rulings under an abuse of discretion standard. See United States v. Burge, 990 F.2d 244, 249 (6th Cir.1992), cert. denied, 113 S.Ct. 2379 (1993).
 
 
 35
 We hold that the district court did not abuse its discretion by refusing to allow defense counsel to pursue this line of inquiry. We further hold that the district court, as the factfinder in the suppression hearing, did not clearly err by finding that the consent in this instance was valid even if the evidence contained in the proffer had been heard.
 
 V.
 
 36
 Anderson argues that the district court erred by refusing to grant him a two-level reduction for acceptance of responsibility. We review such a refusal under the clearly erroneous standard. United States v. Wilson, 878 F.2d 921, 923-24 (6th Cir.1989).
 
 
 37
 U.S.S.G. Sec. 3E1.1(a) provides: "If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels." Application Note 3 of Section 3E1.1 states that
 
 
 38
 [e]ntry of a plea of guilty prior to the commencement of trial combined with truthful admission of involvement in the offense and related conduct will constitute significant evidence of acceptance of responsibility for purposes of this section. However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.
 
 
 39
 Anderson's presentence report recommended that the reduction be rejected for the following reasons:
 
 
 40
 Despite the fact that the defendant's fingerprint was found on the scale, the defendant contends that although he suspected that drugs were present inside 780 South 22nd Street, he denies that he was in any way involved in packaging or distributing the same. Additionally, although the defendant related that Kendricks had been distributing "crack" cocaine for an extended period of time, he in no way assisted Kendricks in said distribution. Based on the contradictory nature of the information provided by the defendant, it is the probation officer's assessment that he has not clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct, and is therefore not entitled to the two point reduction pursuant to U.S.S.G[.] Sec. 3E1.1(a).
 
 
 41
 J.A. at 51.
 
 
 42
 In denying Anderson the two-level reduction, the district court, at the sentencing hearing, referred to Application Note 3 and stated, "The problem here is that Mr. Anderson, when interviewed by the probation officer, really attempted to avoid responsibility for his criminal conduct, attempted to negate or minimize it, failed to demonstrate any remorse or regret, and the Court believes that the probation officer was correct in denying the adjustment." Id. at 292-93.
 
 
 43
 In his brief to this court, Anderson states that he accepted responsibility by entering a guilty plea, thereby saving the government time and expense, and therefore the district court's decision was clearly erroneous.
 
 
 44
 We hold that the district court's finding was not clearly erroneous and should be affirmed.
 
 VI.
 
 45
 For the foregoing reasons, the district court's determinations are affirmed.
 
 
 
 [1]
 The district court implicitly found that Kendricks had standing to challenge the search, presumably based on his testimony that he owned a key to the apartment and slept there four to five nights a week